James **FOWLER** et al., Plaintiffs-Appellants,

v.

Ruth **SCHWARZWALDER** et al., Defendants-Appellees,

and

Daniel R. Souder et al., Defendants-Intervenors-Appellees.

No. 73–1129.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1973.

Decided June 7, 1974.

See also 351 F.Supp. 721, 348 F. Supp. 844.

Andrew W. Haines, St. Paul, Minn., for appellants.

Scott Davies, City Atty., St. Paul, Minn., for appellees.

Before MATTHES, Senior Circuit Judge, and LAY and ROSS, Circuit Judges.

MATTHES, Senior Circuit Judge.

Plaintiffs in this litigation, seven black residents of St. Paul, Minnesota, who took an examination in July of 1972 to be city firemen, brought this class action against the St. Paul Civil Service Commission, its Director, and the fire chief of St. Paul. Plaintiffs sought injunctive relief from alleged racially discriminatory practices of the defendants in examining and hiring applicants for

firemen for St. Paul. Jurisdiction was founded upon 28 U.S.C. § 1343(3) and (4), and 42 U.S.C. §§ 1981 and 1983.

On December 6, 1972, the district court, although noting that it was not claimed that the defendants acted with "ill purpose or discriminatory intent" in constructing the test in July, nevertheless ruled that the plaintiffs had made a prima facie showing that the examination discriminated against applicants from minority groups, and that the defendants had failed to rebut the prima facie case. The court enjoined the defendants from employing applicants on the basis of their performance on the July examination and enjoined the future use of such a test until it had been validated according to certain EEOC guidelines.

Subsequently, plaintiffs moved for an order by the district court awarding to the plaintiffs their reasonable costs, including attorney's fees. On January 4, 1973, the district court awarded costs, but denied an award of attorney's fees on the grounds that

> There is no statutory authority for such, and this is not the type of extraordinary case where the conduct of defendants was characterized by bad faith or unreasonable or obdurate obstinacy as to justify such an award.

The award of fees was also denied on a subsequent motion for reconsideration. In appealing the denial of the fees, plaintiffs contended that the district court employed the incorrect standard in exercising its discretion to grant or deny an award for attorney's fees when it denied fees solely on the ground that the record showed an absence of bad faith or obstinacy by the defendants. We delayed disposition of the appeal pending a decision by the Supreme Court in Bradley v. School Board, 472 F.2d 318 (4th Cir. 1972), a school desegregation case which raised some issues similar to those posed by the appeal in the instant case.

A reading of the recent opinion of the Supreme Court in the *Bradley* case, —

U.S. ——, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), however, reveals that the Court ruled in favor of granting attorney's fees in that case on the basis of a specific statutory authorization in § 718 of Title VII of the Emergency School Aid Act, legislation not relevant to the litigation before us. The opinion of the Court in *Bradley* indicates that the award or denial of attorney's fees in cases like the present one is still a matter of discretion for the district court. Nevertheless, the issue on this appeal remains whether the district court used the correct guidelines in exercising that discretion.

■ In American jurisprudence the traditional rule has been that, absent statutory authorization, attorney's fees are not recoverable as costs. But the federal courts have the equitable power to grant such fees, Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939), and the courts have developed several exceptions to the general rule that no attorney's fees should be awarded. Thus courts have granted attorney's fees when the defendant has acted in bad faith or has been obdurate and obstinate during the controversy. See, e. g., Bell v. School Board, 321 F.2d 494 (4th Cir. 1963); Cato v. Parham, 293 F.Supp. 1375 (E. D.Ark.), aff'd, 403 F.2d 12 (8th Cir. 1968). Federal courts have also awarded fees to plaintiffs from a "common fund" which the plaintiffs have successfully secured or protected for the benefit of themselves and others. See Sprague v. Ticonic Nat'l Bank, *supra*.

■ But it is yet another extra-statutory grounds for the exercise of court discretion to award attorney's fees that is relevant to this appeal. Two opinions of the Supreme Court in recent years have served as the impetus for the establishment of new guidelines for the award of attorney's fees to encourage litigation which vindicates certain strong Congressional policies. See Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970);

Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). *See generally* Falcon, Award of Attorney's Fees in Civil Rights and Constitutional Litigation, 33 Md.L.Rev. 379, 396–411 (1973); Nussbaum, Attorney's Fees in Public Interest Litigation, 48 N.Y.U.L.Rev. 301 (1973); Note, Allowance of Attorney Fees in Civil Rights Litigation, 41 U.Cin.L.Rev. 405 (1972); Comment, The Allocation of Attorney's Fees After Mills v. Electric Auto-Lite Co., 38 U.Chi.L.Rev. 316 (1971).

In *Newman,* the Supreme Court held that the provision in Title II of the Civil Rights Act of 1964 allowing attorney's fees to be awarded in certain public accommodations suits was intended by Congress

> not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief under Title II.

390 U.S. at 402. The thrust of the Court's per curiam opinion was that, absent compelling circumstances, a plaintiff who acts as a "private attorney general" in seeking to vindicate Congressional policy of the highest priority and advance the public interest should not be forced to bear the costs of litigation. Indeed, few aggrieved parties would have the financial resources to pay such fees.

The holding in *Newman* has been extended to the award of fees in litigation under the equal employment opportunity provisions of Title VII of the same Act, which also contains a provision for awarding fees. *See, e. g.,* Parham v. Southwestern Bell Tel. Co., 433 F.2d 421 (8th Cir. 1970). Moreover, the "private attorney general" doctrine of *Newman* has been applied to award attorney's fees in suits under civil rights provisions of the United States Code without

an express authorization of such fees. Thus attorney's fees have been granted in suits under 42 U.S.C. § 1982, Knight v. Auciello, 453 F.2d 852 (1st Cir. 1972); Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971); under 42 U.S.C. § 1983, Sims v. Amos, 340 F.Supp. 691 (M.D.Ala.1972); Lyle v. Teresi, 327 F.Supp. 683 (D. Minn.1971)[1]; and under 42 U.S.C. § 1981, Cooper v. Allen, 467 F.2d 836 (5th Cir. 1972).

In Lee v. Southern Home Sites Corp., *supra,* a suit involving litigation arising from housing discrimination, the Fifth Circuit noted that § 1982 has no provision authorizing the award of attorney's fees to a successful plaintiff, but then observed

> . . . [I]n fashioning an effective remedy for the rights declared by Congress one hundred years ago, courts should look not only to policy of the enacting Congress but also to the policy embodied in closely related legislation. . . .
>
> In adjudicating the shape of the remedies for violations of 42 U.S.C. §§ 1981, 1982, courts must give weight to the actions of Congress in enacting the sections of the 1964 and 1968 Civil Rights Act aimed at very similarly defined social problems.

444 F.2d at 146. The court reasoned that, since Congress had provided for attorney's fees in suits under the public accommodations provisions of Title II of the Civil Rights Act of 1964, Congressional policy should be furthered by the award of fees in most instances in housing discrimination suits under § 1982.

Such reasoning is persuasive in our case as well. *See* Cooper v. Allen, *supra.* A suit under §§ 1981 and 1983 attacking racial discrimination in employment clearly furthers the will of Congress that such discrimination should be eliminated. *See* Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

---

1. In *Lyle,* the late Judge Neville, writing with his characteristic precision and thoroughness, held that *Newman* mandated an allowance of attorney's fees in a § 1983 suit involving harassment of blacks by police officers. *See* 327 F.Supp. at 685–686.

In addition, it is apparent that Congress is aware that the award of attorney's fees may be an effective device in furthering its policy that there be no racial discrimination in employment, for it provided for the award of such fees for certain employment discrimination litigation under Title VII. 42 U.S.C. § 2000e–5(k).

Consequently, we remand to the district court in order that it may exercise its discretion to award or deny attorney's fees in this suit under §§ 1981 and 1983 in light of the teachings in *Mills*, *Newman*, and the subsequent federal court cases cited above applying the "private attorney general" doctrine. We believe that the district court should have the first opportunity to consider the plaintiffs' application for attorney's fees in light of what we consider to be the prevailing standards. *See generally* Stanford Daily v. Zurcher, 366 F.Supp. 18, 21–25 (N.D.Cal.1973); La Raza Unida v. Volpe, 57 F.R.D. 94, 98–101 (N.D. Cal.1972), for examples of analyses in determining if an award of fees is appropriate.

Reversed and remanded for further proceedings consistent with this opinion.